# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MUOI VAN DUONG,

             Petitioner,

    v.

STEW SHERMAN, Warden,

             Respondent.

_____

)
)
)
)
)
)
)
)
)
)

NO. CV 20-6040-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On July 6, 2020, Petitioner, a California state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("the Petition"). (Dkt. No. 1.) On August 2, 2021, Respondent filed an Answer to the Petition and lodged the relevant state court records. (Dkt. Nos. 31-32.) On January 10, 2022, the Court deemed the matter ready for submission because Petitioner had not filed a Reply. (Dkt. No. 45.) The parties have consented to the jurisdiction of the undersigned Magistrate Judge. (Dkt. Nos. 2, 22, 26.) Briefing on this matter is now complete, and the matter is under submission to the Court for decision.

1

# PRIOR PROCEEDINGS

On December 12, 2017, a Ventura County Superior Court jury convicted Petitioner of resisting an executive officer with force or violence (California Penal Code ("Penal Code") § 69(a)).  (2 Reporter's Transcript ("RT") 283-84; Clerk's Transcript ("CT") 114.)  On the same date, in a bifurcated trial, the jury found true the allegations that Petitioner had committed two serious prior felonies (assault with a deadly weapon and making criminal threats) and that he had served three prior prison terms (Penal Code §§ 245(a)(1), 422, 667(c)(1), 667(e)(1), 667.5(b)).  (2 RT 323-25; CT 115-17.)  On March 1, 2018, the trial court sentenced Petitioner to seven years in state prison.  (2 RT 334; CT 141, 143.)

Petitioner appealed the judgment of conviction.  (Lodged Document ("Lodg.") No. 4.)  On April 15, 2019, the California Court of Appeal issued an unpublished, reasoned opinion affirming the judgment.  (Lodg. No. 7.)  On June 19, 2019, the California Supreme Court summarily denied a Petition for Review.  (Lodg. Nos. 8-9.)

On April 17, 2020, Petitioner filed a habeas petition with the Ventura County Superior Court. (Lodg. No. 10 at 1.)  On April 24, 2020, the Superior Court denied the habeas petition.  (*Id*.)  On September 9, 2020, Petitioner filed another habeas petition with the Ventura County Superior Court.  (*Id*. at 3.)  On September 14, 2020, the Superior Court denied the habeas petition.  (*Id*.)

Petitioner filed the instant Petition on July 6, 2020.  (Dkt. No. 1.)  On August 21, 2020, the Court granted Petitioner's request for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), so he could exhaust his unexhausted claims.  (Dkt. No. 7.)  On November 19, 2020, Petitioner filed a habeas petition with the California Supreme Court.  (Lodg. No. 11.)  On January 27, 2021, the California Supreme Court denied the habeas petition.  (Lodg. No. 12.)  On February 12, 2021, the Court lifted the stay.  (Dkt. No. 13.)

## SUMMARY OF THE EVIDENCE AT TRIAL

The following factual summary from the California Court of Appeal's unpublished decision on direct review is provided as background.  *See also* 28 U.S.C. § 2254e(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence).

On August 6, 2017, Oxnard police received a 911 call from [Petitioner's] brother Hai Duong, who said that [Petitioner] was outside and "broke . . . the door . . . to the house."  Asked to explain [Petitioner's] conduct, Hai Duong replied, "he do drugs."  He identified [Petitioner] as "Timmy Duong."

Officers Hayley Bracken, David McAlpine and Jamie Toney went to Hai Duong's house in uniform, driving marked patrol cars.  The dispatcher told them that [Petitioner] was on parole, was subject to restraining orders, and had an outstanding arrest warrant for a parole violation.  Bracken testified that they had a duty to take [Petitioner] into custody on the warrant.  Also, she mistakenly believed that the restraining orders applied to the address; the dispatcher did not mention that the orders were unconnected to Hai Duong's home.

Bracken saw no one at Hai Duong's front door.  She entered the side yard through a partially open gate and saw [Petitioner], whom she knew from a prior encounter as "Timmy."  The exchange between [Petitioner] and the officers was captured on body cameras.  McAlpine and Toney believed [Petitioner] was under the influence of drugs because he was sweating, grinding his teeth, fidgeting and had rapid speech.

///
///

3

When Bracken asked [Petitioner] if she could talk to him, he demanded to know who called the police. Without identifying the caller, she assured him that someone called. [Petitioner] stated that his family was inside in the house, adding "they're chicken" and "they hide."

McAlpine testified that [Petitioner], as a parolee, can be searched and detained at any time and must cooperate with police. To gauge [Petitioner's] honesty and cooperation, McAlpine asked if he was on parole, which he denied. McAlpine directed [Petitioner] to relinquish the cell phone in his hand and to extend his wrist. When McAlpine took hold of [Petitioner's] left wrist to prevent him from fleeing, he tried to jump and spin out of McAlpine's grasp. McAlpine described [Petitioner] as "extremely strong and resistant" to cooperating with a parole search.

Bracken tried to gain control of [Petitioner's] right arm. He hit his head into her chin and mouth in a movement she and McAlpine described as a "headbutt." Toney grabbed [Petitioner's] legs. They lowered [Petitioner] to the ground and handcuffed him. Bracken had a swollen lip and a bruise inside her mouth from the headbutt.

For safety reasons McAlpine did not tell [Petitioner] about the arrest warrant before taking him into custody, to prevent him from devising a plan of escape. After the scuffle, Toney told [Petitioner] about the warrant. He demanded to see it. En route to the jail, [Petitioner] yelled that he "knocked [Bracken] in [her] head, and that if [she] did not show him the warrant, he would kick [her] in [her] head." The recorded threat was played for the jury.

(Lodg. No. 7 at 2-4.)

4

1

2

### PETITIONER'S HABEAS CLAIMS

3       Petitioner presents the following grounds for federal habeas relief:

4

5       *Ground One*:  There was no substantial evidence that Petitioner knew that the officers

6   were engaged in the lawful performance of their duty.  (Dkt. No. 1 at 5.)[1]

7

8       *Ground Two*: The trial court prejudicially erred in not instructing sua sponte on assault

9   as a lesser-included offense.  (*Id*. at 5-6.)

10

11      *Ground Three*:   The trial court committed prejudicial error in admitting evidence

12  concerning the existence of two restraining orders against Petitioner.  (*Id*. at 6.)

13

14      *Ground Four*: The arresting officers violated Petitioner's rights under *Miranda v.*

15  *Arizona*, 384 U.S. 436 (1966).  (*Id*.)

16

17      *Ground Five*:  There were violations of due process and *Brady v. Maryland*, 373 U.S.

18  83 (1963), because the video evidence was inadequate, inaudible, and cut off.  (*Id*.)

19

20              ### STANDARD OF REVIEW

21

22  **I.      The Antiterrorism And Effective Death Penalty Act.**

23

24      Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

25  Penalty Act of 1996 ("AEDPA"), a state prisoner whose claim has been "adjudicated on the

26

27

28

---

[1]  The page numbers cited from the parties' pleadings were automatically generated by the Court's electronic filing system.

5

merits" cannot obtain federal habeas relief unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For the purposes of Section 2254(d), "clearly established Federal law" refers to the Supreme Court holdings in existence at the time of the state court decision in issue. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *see also Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) (*per curiam*) ("circuit precedent does not constitute clearly established federal law. . . . [n]or, of course, do state-court decisions, treatises, or law review articles") (internal quotation marks and citations omitted). A Supreme Court precedent is not clearly established law under § 2254(d)(1) unless it "squarely addresses the issue" in the case before the state court or establishes a legal principle that "clearly extends" to the case before the state court. *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) (it "'is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by'" the Supreme Court) (citation omitted).

A state court decision is "contrary to" clearly established federal law under Section 2254(d)(1) only if there is "a direct and irreconcilable conflict," which occurs when the state court either (1) arrived at a conclusion opposite to the one reached by the Supreme Court on a question of law or (2) confronted a set of facts materially indistinguishable from a relevant Supreme Court decision but reached an opposite result. *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law under Section 2254(d)(1) if the state court's application of Supreme Court precedent was "objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014). The petitioner must establish

6

that "there [can] be no 'fairminded disagreement'" that the clearly established rule at issue applies to the facts of the case. *See id.* at 1706-07 (internal citation omitted). Finally, a state court's decision is based on an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2) when the federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 710 (2014). So long as "'[r]easonable minds reviewing the record might disagree,'" the state court's determination of the facts is not unreasonable. *See Brumfield v. Cain*, 576 U.S. 305, 314 (2015).

AEDPA thus "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *White v. Wheeler*, 577 U.S. 73, 77 (2015) (*per curiam*) (internal quotation marks and citation omitted). Petitioner carries the burden of proof. *See Pinholster*, 563 U.S. at 181.

## II.    The State Court Decision On Petitioner's Claim In Ground One Is Entitled To AEDPA Deference.

Petitioner presented his claim in Ground One on appeal in the California Court of Appeal (Lodg. No. 4 at 24-31), which rejected it in a reasoned opinion (Lodg. No. 7 at 5-12). Petitioner then presented the claim in his Petition for Review with the California Supreme Court (Lodg. No. 8 at 19-27), which summarily denied it (Lodg. No. 9). Thus, Section 2254(d) applies, and the Court looks through the California Supreme Court's summary denial to the last reasoned decision – the decision of the California Court of Appeal on direct review – to determine whether the state court's adjudication of Petitioner's claim in Ground One is unreasonable or contrary to clearly established federal law. *See Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013) ("Consistent with our decision in *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991), the Ninth Circuit 'look[ed] through' the California Supreme Court's summary denial

of [the petitioner's] petition for review and examined the California Court of Appeal's opinion."); *see also*, *e.g.*, *Jones v. Harrington*, 829 F.3d 1128, 1136 (9th Cir. 2016) (looking through California Supreme Court's summary denial of a petition for review to the California Court of Appeal's decision on direct review).

### III.  Petitioner's Remaining Claims In Grounds Two To Five Are Reviewed *De Novo*.

Petitioner presented his claims in Grounds Two and Three on appeal in the California Court of Appeal (Lodg. No. 4 at 31-47), which rejected them in a reasoned opinion (Lodg. No. 7 at 6-9).  Petitioner did not, however, raise these claims before the California Supreme Court, either in his Petition for Review or his habeas petition.  (Lodg. Nos. 8, 11.)  Thus, Ground Two and Three are unexhausted.  Respondent argues that, despite Petitioner's failure to exhaust Grounds Two and Three before the California Supreme Court, the Court nonetheless should apply deference under the AEDPA to the reasoned merits adjudication by the lower state court, the California Court of Appeal.  (Dkt. No. 31 at 21-22.)  It is unnecessary to resolve this argument.  "In addressing the merits, we need not decide whether a claim 'adjudicated on the merits' by a state [lower] court is subject to AEDPA deference under § 2254(d) if the habeas petitioner failed to exhaust the claim fully in the state courts.  Rather, we may 'engag[e] in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.'"  *Stevens v. Davis*, 25 F.4th 1141, 1165 (9th Cir. 2022) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)).

Petitioner presented his claims in Grounds Four and Five in his habeas petition with the California Supreme Court (Lodg. No. 11 at 3, 7), which rejected it solely on procedural grounds (Lodg. No. 12).  Thus, Grounds Four and Five also are reviewed de novo.  *See Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014) ("If the claim was not 'adjudicated on the

8

merits' by the state court, the review is *de novo*.") (quoting *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## DISCUSSION

Respondent raises the additional argument that Grounds Four and Five are procedurally defaulted.  (Dkt. No. 31 at 15, 23.)  However, because it is more efficient to resolve these claims on the merits, the Court elects to resolve them on that basis.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Floyd v. Filson*, 949 F.3d 1128, 1138 (9th Cir. 2020) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002)).

## I.  Habeas Relief Is Not Warranted For Petitioner's Claim Of Insufficiency Of The Evidence (Ground One).

In Ground One, Petitioner claims that there was no substantial evidence that he knew the officers were engaged in the lawful performance of their duty (Dkt. No. 1 at 5), which is an element of Petitioner's crime of conviction of resisting an executive officer with force or violence (Penal Code § 69(a)).

### A.    Legal Standard.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  When a habeas petitioner challenges the sufficiency of the evidence supporting the jury's verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  *Jackson* does not require that

the prosecutor affirmatively "'rule out every hypothesis except that of guilt.'" *Wright v. West*, 505 U.S. 277, 296 (1992) (citation omitted). Further, "'[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted). When the factual record supports conflicting inferences, the federal court must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (*per curiam*). Ultimately, for Petitioner's claim to be successful, the jury's finding must be "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (*per curiam*).

When, as here, both *Jackson* and AEDPA apply to the same claim, the claim is reviewed under a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*). Accordingly, this Court's inquiry is limited to whether the California courts' rejection of Petitioner's insufficiency of the evidence claims was an objectively unreasonable application of *Jackson*. *See Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011); *Juan H. v. Allen*, 408 F.3d 1262, 1275 n.13 (9th Cir. 2005).

## B. Analysis.

The California Court of Appeal rejected Petitioner's claim that the evidence was insufficient to establish he knew the officers were performing their duties:

> The jury was instructed that the prosecution must prove (1) [Petitioner] unlawfully used force or violence to resist an officer; (2) when he acted, the officer was performing a lawful duty; and (3) [Petitioner] knew the officer was performing a duty. In summation, defense counsel conceded that the officers were performing their lawful duty and [Petitioner] "absolutely willfully resisted."

[Petitioner] argues that "[t]here was no evidence to support the knowledge element of the charged crime."  We disagree.  Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could find, beyond a reasonable doubt, that [Petitioner] knew the officers were performing their duties.  (*People v. Holt* (1997) 15 Cal.4th 619, 667 [standard of review].)

Section 69 "is designed to protect police officers against violent interference with performance of their duties."  (*People v. Martin* (2005) 133 Cal.App.4th 776, 782.)  The defendant must know the person being resisted is an officer engaged in the performance of his or her duties.  (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 237.)  The jury was instructed that "[t]he duties of a peace officer include responding to calls for service, investigating crimes, enforcing parole terms and conditions, and arresting persons for arrest warrants."

Substantial evidence supports the jury's implied finding that [Petitioner] knew uniformed officers were investigating his attempts to break down his brother's door.  The first thing he asked was "Who called you?"  Bracken replied, "Oh, I'm not sure yet.  But they did call us."  Moments later, McAlpine asked [Petitioner], "are you on parole?"  The jury could find that when [Petitioner] resisted arrest, he knew the officers were performing their duties in responding to a service call and checking his parole status, satisfying the knowledge element of section 69.

[Petitioner] argues that he was unaware the officers intended to arrest him on a warrant.  However, the testimony shows that police have safety reasons not to mention an arrest warrant, to avoid giving the arrestee an opportunity to plan an escape or attack upon the officers.  It is especially true here, where [Petitioner] was agitated, appeared to be under the influence of drugs, and acknowledged that

11

family members were hiding from him in fear.  It is enough that [Petitioner] knew the officers entered the yard and detained him to carry out their duty to investigate a citizen complaint about his violent behavior, even if he was unaware of the arrest warrant.  As a matter of public policy, a person who knows or should know that he is being arrested by police has a duty "to refrain from using force or any weapon to resist such arrest," even if the arrest is unlawful.  (§ 834a; *People v. Richards* (2017) 18 Cal.App.5th 549, 564.)

(Lodg. No. 7 at 4-5.)

The California Court of Appeal's rejection of Petitioner's claim did not involve an unreasonable application of "the already deferential *Jackson* standard."  *Kyzar v. Ryan*, 780 F.3d 940, 949 (9th Cir. 2015).  The evidence presented at trial was sufficient for a rational jury to find that Petitioner knew the officers were performing their duties.  The officers told Petitioner that "they did call us" (Supplemental Clerk's Transcript ("Supp. CT") 9, 31) and asked Petitioner if he was on parole (Supp. CT 11, 32).  From this evidence, a rational jury could find that Petitioner knew the officers were performing their duties by responding to a service call and by checking his parole status.

This evidence was not rendered insufficient by other evidence that, before head butting Officer Bracken, Petitioner was unaware the officers intended to arrest him on a warrant.[2]  The jury heard evidence that Petitioner, throughout the incident, repeatedly demanded to see an arrest warrant (Supp. CT 5, 7; 1 RT 151, 164) or "paperwork" (Supp. CT 7, 20, 40), but that the officers never showed him proof of the warrant (1 RT 124, 137).  But Officers Bracken and McAlpine gave multiple explanations for that action: they are not required to show a

---

[2]  It was only after Petitioner head butted Officer Bracken that Officer Toney told Petitioner that Petitioner had a warrant (Supp. CT 15, 36) and would be taken to the station on that warrant (Supp. CT 20, 40).

warrant to an arrested person (1 RT 151), the warrant is not available until the person arrives at the jail (1 RT 137-38), they may decline to tell a person about the warrant because of safety issues (1 RT 138), and they did not want to give Petitioner a reason to prepare for an escape or an assault (1 RT 145).  But the fact that the officers did not give Petitioner information about the warrant before Petitioner struck Officer Bracken did not mean that Petitioner lacked actual knowledge, from other sources of information, that the officers were engaged in the performance of their duties.

Under California law, "[r]equiring proof of actual knowledge does not mean that a defendant can avoid culpability under Penal Code section 69 merely by asserting a belief that an officer had no right to detain him."  *In re A.L.*, 38 Cal. App. 5th 15, 22 (2019).  "The trier of fact is not required to accept the defendant's version of events, particularly if it is at odds with other evidence." *Id*.  Here, a rational jury was not required to accept Petitioner's assertion that he did not know the officers were performing their duties merely because of evidence that they failed to give him information about the arrest warrant.  Other evidence showed that the officers gave Petitioner reasons independent of the warrant for detaining him, based on a service call (Supp. CT 9, 31) and a parole status check (Supp. CT 11, 32).  It was not objectively unreasonable for the state court to conclude that this evidence was sufficient for a rational jury to find that the knowledge element of the crime of conviction was proven beyond a reasonable doubt.  Thus, this claim is denied.

## II.   Habeas Relief Is Not Warranted For Petitioner's Claim Of Instructional Error (Ground Two).

In Ground Two, Petitioner claims that the trial court prejudicially erred in not instructing *sua sponte* on assault as a lesser-included offense.  (*Id*. at 5-6.)

///

///

13

Respondent argues that this claim should be denied for multiple reasons:  it is barred by *Teague v. Lane*, 489 U.S. 288 (1989); it is not cognizable in a federal habeas proceeding; and, in any event, it lacks merit.  (Dkt. No. 31 at 27, 30-34.)  Each argument is addressed in turn.

## A.      The Claim Is Barred by *Teague*.

Respondent first argues that relief for Ground Two is barred by the non-retroactivity principle of *Teague*, 489 U.S. 288.  (Dkt. No. 31 at 30-32.)  Respondent specifically argues that granting relief on this claim would require the announcement of "a new rule of constitutional law . . . that a defendant's right to present a defense in a noncapital criminal trial includes the right to have the jury instructed on lesser-included offenses."  (*Id*. at 30.)

"[N]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  *Teague*, 489 U.S. at 310.  "In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."  *Id*. at 301.  "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final."  *Id*. (emphasis in original).  Under *Teague*, there were two narrow exceptions to its principle of non-retroactivity.  *Id*. at 311-13.  "The first, limited exception is for new rules forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendant because of their status or offense."  *O'Dell v. Netherland*, 521 U.S. 151, 157 (1997) (citation and internal quotation marks omitted).  The second exception is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Id*. (citation and internal quotation marks omitted).  To determine whether a habeas petitioner is entitled to the application of a particular rule under *Teague*, a federal habeas court is to perform a three-step analysis:  (1) determine the date on which the defendant's conviction became final;

14

(2) determine whether the rule is new; and (3) if the rule is new, determine whether the rule nonetheless falls within one of the two narrow exceptions. *Id*. at 156-57.

When Petitioner's conviction became final in 2019, no existing precedent dictated a right to a jury instruction on lesser included offenses in non-capital cases. Moreover, the Ninth Circuit had held that to extend federal habeas relief for such claims in non-capital cases would create a new rule under Teague. *See Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), *overruled on other ground by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (*en banc*). Thus, federal habeas relief cannot be granted here unless the district court, in contravention of *Teague*, were to announce and apply a new rule that was not dictated by existing precedent when Petitioner's conviction became final. *See Greenawalt v. Ricketts*, 943 F.2d 1020, 1024 (9th Cir. 1991) ("[*Teague*] applies equally to all levels of the federal judiciary; a new rule announced by a district court can have no greater retroactive effect than one announced directly by the Supreme Court.").

Because Petitioner's claim that he was entitled to an instruction on a lesser-included offense would require the announcement of a new rule that "is unsupported by existing case law, we must decide whether it falls within either of the two exceptions to the principle that we cannot adopt and apply retroactively new federal constitutional rights in state prison habeas corpus proceedings." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The first exception— for the decriminalization of certain primary conduct or the prohibition of punishment for a class of defendants—is inapplicable here. The primary conduct in this case is the knowing resistance of an officer's execution of duties with force or violence, "the prosecution of which is, to put it mildly, not prohibited by the [new] rule"; nor would the new rule place "a prohibition on the imposition of a particular punishment on a certain class of offenders." *Butler v. McKellar*, 494 U.S. 407, 415 (1990). The second exception—for a "watershed" rule of criminal procedure—no longer exists. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021) (holding that "[t]he watershed exception is moribund" and "must be regarded as retaining no

15

vitality") (citation and internal quotation marks omitted); *see also Ochoa v. Davis*, 16 F.4th 1314, 1338 (9th Cir. 2021) (noting that *Vannoy* eliminated the watershed exception).  Because neither exception is available, federal habeas relief for Petitioner's claim of instructional error is precluded by the non-retroactivity principle of *Teague*.

### B.    The Claim Is Not Cognizable.

Respondent next argues that relief is unavailable for Ground Two because it fails to state a cognizable federal question.  (Dkt. No. 31 at 32.)

A criminal defendant in a capital case has a federal constitutional right to have the jury instructed on a lesser-included offense in certain instances.  *See Beck v. Alabama*, 447 U.S. 625, 638 (1980).  But in a non-capital criminal case, such as this case, a state trial court's failure to instruct a jury on a lesser-included offense is not cognizable as a claim on federal habeas review.  *See Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984) (in a non-capital case, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a habeas corpus proceeding.") (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) (*per curiam*)); *see also Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (*per curiam*) (*same*); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question.").

Although an exception may exist, such that a defendant in a non-capital case would be "entitled to adequate instructions on his or her theory of defense," *Bashor*, 730 F.2d at 1240, such an exception would not apply here.  Petitioner's theory of defense was that he did not purposefully or willfully strike Officer Bracken but, instead, was trying to get away and protect himself during a stressful, fast-paced, physical interaction.  (1 RT 82; 2 RT 222, 234.)  This

theory of defense is inconsistent with assault, which requires "that the defendant willfully or purposefully attempted a violent injury or the least touching, i.e., any wrongful act committed by means of physical force against the person of another." *People v. Golde*, 163 Cal. App. 4th 101, 108 (2008) (citation and internal quotation marks omitted). Because Petitioner's claim of entitlement to the assault instruction did not implicate his theory of defense, his claim does not raise a federal constitutional question.

### C. The Claim Lacks Merit.

Respondent finally argues that, in any event, Petitioner's claim of instructional error lacks merit. (Dkt. No. 31 at 32-34.)

### 1. Legal Standard.

As noted, a criminal defendant in a capital case has a federal constitutional right to have the jury instructed on a lesser-included offense in some instances. *Beck*, 447 U.S. at 638. The "goal of the *Beck* rule . . . is to eliminate the distortion of the fact-finding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence." *Schad v. Arizona*, 501 U.S. 624, 646-47 (1991), *abrogated on other ground as stated by Vannoy*, 141 S. Ct. at 1556 n.4; *see also Turner v. Calderon*, 281 F.3d 851, 886 (9th Cir. 2002) (citing *Villafuerte v. Stewart*, 111 F.3d 616, 622-23 (9th Cir. 1997)).

But even in that context, "[d]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original). No due process violation occurs from the failure to instruct on a lesser-included offense when "the record does not support such an instruction." *Carriger v. Lewis*, 971 F.2d 329, 336 (9th Cir. 1992) (*en banc*); *see also Ceja v. Stewart*, 97 F.3d 1246, 1254 (9th Cir. 1996); *Solis*, 219 F.3d at 929.

17

1

2

2.    **Background.**

3    Although this claim is reviewed *de novo*, the California Court of Appeal's discussion of

4    the claim provides background:

5

6    Assault is a necessarily included lesser offense of section 69 if the defendant is

7    alleged to have resisted an officer with force or violence. (*People v. Brown* (2016)

8    245 Cal.App.4th 140, 153 (*Brown*).)  Defense counsel did not request an assault

9    instruction; instead, the jury was instructed on the offense of resisting a peace

10    officer. (§ 148, subd. (a).)[2]  We review de novo the court's failure to give a

11    necessarily included offense. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

12              [2]  The jury was instructed that section 148 applies if (1) Bracken

13              was lawfully performing or attempting to perform her duties; (2)

14              [Petitioner] willfully resisted her performance of those duties; and

15              (3) he knew or reasonably should have known that she was a police

16              officer performing or attempting to perform her duties.

17

18    "[A] trial court is not required to instruct the jury on a necessarily included

19    offense '"when there is no evidence that the offense was less than that charged."'"

20    (*People v. Smith* (2013) 57 Cal.4th 232, 245, quoting *People v. Breverman* (1998)

21    19 Cal.4th 142, at p. 154.)  We conclude that the court was not required to instruct

22    on assault because there is no evidence that the crime was less than the charged

23    offense.

24

25    The evidence established that [Petitioner] knew why the officers were

26    there.  Hai Duong called 911, saying that [Petitioner] was trying to break down

27    the door.  Officers were dispatched to investigate.  [Petitioner] was not visible

28    from the street.  The officers sought him out by passing through a gate into a side

18

yard.  He immediately asked who called them and was told they were there because someone called for help.  He was questioned about his parole status.  No reasonable juror could conclude that [Petitioner] was unaware the officers were carrying out their duties when he resisted them with force or violence.

Though [Petitioner] may not have known about a warrant for his arrest, an officer's duties extend beyond executing arrest warrants, and the jury was so instructed.  It is of no moment if [Petitioner] was unsure whether they were arresting him for making criminal threats, trespassing, or a parole violation.

[Petitioner] relies on *Brown*, *supra*, 245 Cal.App.4th 140.  It does not assist him.  Brown fought with officers who wanted to cite him for riding a bicycle without a light on the sidewalk while wearing headphones.  He claimed the officers attacked him without provocation while he was lying face down after falling; the officers claimed that he attacked them.  (*Id*. at pp. 146-147.)  An assault instruction was required because there were conflicting versions of the event that could allow the jury to conclude "that Brown used excessive force or violence to resist arrest only in response to the officers' unreasonable force.  Under that scenario, Brown could have been found not guilty of the section 69 violation, but still guilty of the lesser crime of assault." (*Id*. at p. 154.)

No such ambiguity exists here.  Body camera images show that officers approached [Petitioner] and spoke to him calmly and respectfully.  After a brief discussion, McAlpine took appellant's wrist.  He responded by fighting McAlpine and head butting Bracken, yet suffered no injury despite his unexpected violence.  His case is not analogous to *Brown*, in which the defendant and the officers described different versions of their encounter and a jury could find that Brown was trying to protect himself from an unprovoked beating.  No jury could make

19

1    such a finding here.  Camera images show that [Petitioner] violently resisted a

2    concededly lawful arrest made without excessive force.

3

4    (Lodg. No. 7 at 6-8.)

5

6        3.        **Analysis.**

7

8        Even assuming that the constitutional protections stated in the *Beck* rule could be

9    applicable to Petitioner's non-capital case, he has not shown that the trial court's failure to

10   instruct the jury on the lesser-included offense of assault was a due process violation.  First,

11   the absence of an assault instruction did not implicate the central concern of the *Beck* rule,

12   because the jury was not left with an "all-or nothing choice" between guilt and innocence.

13   *Schad*, 501 U.S. at 646-67; *Turner*, 281 F.3d at 887; *Villafuerte*, 111 F.3d 623.  Instead, the

14   jury was given the option to find Petitioner guilty of the lesser offense of resisting, obstructing,

15   or delaying a peace officer.  (2 RT 207; CT 92.)  Thus, "the all-or-nothing situation found

16   intolerable in *Beck* was not present here."  *Villafuerte*, 111 F.3d at 623.

17

18       Second, given that the jury was not forced into an "all or nothing" choice, the trial court

19   had no constitutional duty to give instructions on other offenses *sua sponte*.  "*Beck* did not

20   hold that a trial judge *must* give a lesser offense jury instruction *sua sponte*."  *Carriger*, 971

21   F.2d at 335 (emphasis in original); *see also Bashor*, 730 F.2d at 1240 (no due process violation

22   from the state trial court's failure to give a lesser included offense instruction where the

23   defense failed to request it and objected to it).  In particular, under the circumstances here,

24   where the jury had the option of convicting Petitioner of the lesser-included offense of

25   resisting, obstructing, or delaying a peace officer, the trial court had no constitutional duty to

26   give the jury, *sua sponte*, the additional option of assault.  *See Murtishaw v. Woodford*, 255

27   F.3d 926, 955 (9th Cir. 2001) ("Contrary to [Petitioner's] argument, *Beck* does not require trial

28   courts to provide *sua sponte* instructions on each theory that could justify a lesser included

offense.   Rather, it merely requires courts to provide instructions on the lesser included offenses, thus preventing the State from forcing juries to make an 'all or nothing' choice[.]"

Third, the evidence did not warrant an instruction on the lesser-included offense of assault.  *See Carriger*, 971 F.2d at 336; *Ceja*, 97 F.3d at 1254; *Solis*, 219 F.3d at 929.  This question turns on whether a conviction on the lesser included offense "was a rational alternative based on all the evidence in the case."  *Vickers v. Ricketts*, 798 F.2d 369, 371 (9th Cir. 1986).  Here, Petitioner argued that a conviction for assault could have been an alternative based on evidence that he resisted the officers without actual knowledge that they were performing their lawful duties.  (Lodg. No. 4 at 36-37.)  But despite the evidence that Petitioner did not know the officers were executing an arrest warrant (1 RT 124, 137), a jury would have had to conclude that Petitioner nonetheless actually knew the officers were performing their duties by responding to a service call (Supp. CT 9, 31) and by checking his parole status (Supp. CT 11, 32).  Because Petitioner's evidence that he lacked actual knowledge was minimal in light of all the evidence in the case, a conviction for the lesser-included offense of assault was not a rational alternative.  *See Clabourne v. Lewis*, 64 F.3d 1373, 1380 (9th Cir. 1995) (no due process violation from the failure to instruct on a lesser-included offense for which the evidence was "minimal," such that the jury could not rationally have found the petitioner guilty of only that offense).  Because federal habeas relief also is unwarranted on the merits, this claim is denied.

## III.   Habeas Relief Is Not Warranted For Petitioner's Claim Of Evidentiary Error (Ground Three).

In Ground Three, Petitioner claims that the trial court committed prejudicial error in admitting evidence concerning the existence of two restraining orders against Petitioner.  (*Id.* at 6.)

///

21

### A.      Legal Standard.

"A federal habeas court, of course, cannot review questions of state evidence law.  On federal habeas review, we may consider only whether the petitioner's conviction violated constitutional norms."  *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999) (citing *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)).  A federal court's "review of evidentiary rulings is confined to 'determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process.'"  *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (quoting *Windham*, 163 F.3d at 1103).  "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process.  Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"  *Jammal*, 926 F.2d at 920 (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).  "Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose."  *Jammal*, 926 F.2d at 920.

### B.      Background.

The jury heard evidence referencing the fact that Petitioner was the subject of two restraining orders.  (1 RT 87-88; Supp. CT 28.)  It was never proven, however, that the restraining orders were connected to the person who had called 911 or to that person's house.  Although this claim is reviewed *de novo*, the California Court of Appeal's discussion of the claim provides background:

> Citing Evidence Code section 352, [Petitioner] moved to exclude evidence
> that he was the subject of two restraining orders, which were unconnected to Hai
> Duong and his house.  The court denied his motion.  The court has broad discretion
> to determine the admissibility of evidence; we review its ruling for abuse of
> discretion.  (*People v. Riggs* (2008) 44 Cal.4th 248, 289-290.)

The restraining orders were not admitted into evidence. They were mentioned in the dispatch to patrol officers, to show what information they had and how it affected their actions. A dispatch recording is nontestimonial evidence describing police actions. (*People v. Mitchell* (2005) 131 Cal.App.4th 1210, 1224-1225.) When Bracken responded to the service call, she believed [Petitioner] was violating restraining orders by trying to force his way into a home.

The court was within the bounds of reason in ruling that the evidence was not unduly prejudicial. (Evid. Code, § 352; *People v. Orloff* (2016) 2 Cal.App.5th 947, 956-957.) The court instructed the jury three times that matters discussed in the dispatch recording, including the restraining orders, "is not being admitted to prove that what's actually said here is true. It's being admitted because that's the information the police had when they went to the scene to explain why they did what they did" and what the police "thought was going on at the time they went to the residence." We must presume the jury followed the instructions. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.)

The evidence against [Petitioner] was overwhelming. It is highly improbable that a more favorable outcome would have been achieved if the restraining orders had not been mentioned. Hai Duong called 911 seeking police assistance because [Petitioner] was trying to break down his door. Three officers went to the Duong residence and encountered [Petitioner]; he knew that someone called them. His unprovoked violence was filmed from three angles and shown to the jury.

(Lodg. No. 7 at 8-9.)

///

///

1

2

### C.     Analysis.

3

Petitioner has not shown that the jury's exposure to evidence referring to the restraining orders violated his right to due process.  First, the jury could have drawn permissible inferences from that evidence.  *See Kipp v. Davis*, 971 F.3d 939, 956 (9th Cir. 2020) ("[W]e have found no due process violation where there *were* permissible inferences that the jury could draw from the challenged evidence.") (emphasis in original) (collecting cases).  Although the evidence of the restraining orders were not proven to be connected to the officers' service call on the night of the incident, the evidence nonetheless helped explain why the officers acted as they did during their encounter with Petitioner.  Indeed, Officer Bracken testified that she believed the restraining orders did relate to the residence to which the officers were making the service call.  (1 RT 103.)  Thus, evidence of the restraining orders was "relevant to a fact of consequence" (i.e., the officers' actions) and did not "lead only to impermissible inferences about [Petitioner's] character."  *Windham*, 163 F.3d at 1104 (quoting *McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir. 1993)).

Second, the trial court instructed the jury about the permissible inferences that could be drawn from the evidence of the restraining orders.  "In such cases, 'we must rely on the jury to sort [the inferences] out in light of the court's instructions.'"  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) (alteration in original) (quoting *Jammal*, 926 F.2d at 920).  Specifically, the trial court instructed the jury that "this evidence is not being admitted to prove that what's actually said here is true," but, rather, was being admitted "because that's the information the police had when they went to the scene to explain why they did what they did."  (1 RT 85.)   The trial court subsequently instructed the jury on two more occasions that evidence of the restraining orders were not being offered for their truth, but to explain why the officers acted as they did.  (1 RT 90, 105.)  Finally, the jury was instructed that "certain evidence was admitted for a limited purpose" and that it could "consider that evidence only for that purpose and for no other."  (2 RT 203; CT 85.)  "Because we must presume that the

24

jury followed its instructions to consider only the permissible inference [from the evidence], . . . admission of evidence about the [restraining orders] did not violate due process." *Boyde*, 404 F.3d at 1173.

Third, "the properly admitted evidence of [Petitioner's] guilt was substantial." *Correll v. Stewart*, 137 F.3d 1404, 1417 (9th Cir. 1998).  The properly admitted evidence showed that the police were called to the residence because Petitioner was trying to break down the door. (Supp. CT 22-23.)  When the officers arrived, they told Petitioner that someone had called them (Supp. CT 9, 31) and asked him about his parole status (Supp. CT 11, 32), establishing that Petitioner actually knew they were engaged in the performance of their duties.  Petitioner head butted Officer Bracken without provocation.  (1 RT 110, 147; Supp. CT 12, 13, 33, 34.) While he was being transported to jail, Petitioner admitted that he had knocked Officer Bracken in the head.  (Supp. CT 5.)  Given this evidence, "it was highly improbable that the error, if any, 'had substantial and injurious effect or influence in determining the jury's verdict[.]'" *Correll*, 137 F.3d at 1417 (quoting *McKinney*, 993 F.2d at 1380 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993))); *see also Ghent v. Woodford*, 279 F.3d 1121, 1127 (9th Cir. 2002) ("Several cases find the erroneous admission . . . of evidence harmless because of the overwhelming evidence of the guilt of the defendant.").  Thus, this claim is denied.

## IV.    Habeas Relief Is Not Warranted For Petitioner's *Miranda* Claim (Ground Four).

In Ground Four, Petitioner claims that the arresting officers violated Petitioner's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  (Dkt. No. 1 at 6.)

### A.    Legal Standard.

"*Miranda* 'determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the

putative defendant that he has the right to remain silent and the right to the presence of an attorney.'" *Robertson v. Pichon*, 849 F.3d 1173, 1183 (9th Cir. 2017) (quoting *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (citing *Miranda*, 384 U.S. at 479))). But "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect is subject to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). The term "interrogation" means "express questioning or its functional equivalent." *Id*. at 300-01. "Absent such interrogation, there would have been no infringement of the right[.]" *Edwards*, 451 U.S. at 486.

### B.    Analysis.

During a hearing on the admissibility of the audiotape of Officer Bracken's transport of Petitioner to the jail, Officer Bracken testified that Petitioner was under arrest at that time but she did not give Petitioner *Miranda* warnings. (1 RT 26.) Officer Bracken also testified that she did not ask Petitioner any questions or attempt to elicit any incriminating responses from him. (*Id*.) During the ride, Petitioner stated that he wanted to see the arrest warrant and that "I kick . . . your head" and "I knock your head." (Supp. Ct. 5, 7.) The trial court allowed the audiotape of these statements into evidence because, among other things, the statements were not the subject of a custodial interrogation. (1 RT 46.)

As an initial matter, Petitioner's *Miranda* claim is conclusory. "It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (alteration in original) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Petitioner's claim is "argued in a single page, without reference to the record or any document." *Jones*, 66 F.3d at 204

(internal quotation marks omitted).  Because Petitioner's "conclusory allegations did not meet the specificity requirement," his claim may be denied on this ground.  *Id*. at 205.

Even if Petitioner's claim could be construed as challenging, under *Miranda*, the admission of his audiotaped statements to Officer Bracken in the police car (Dkt. No. 1 at 6), that claim is meritless.  Petitioner's statements, though made while he was in custody, were volunteered rather than the product of an interrogation.  *See Innis,* 446 U.S. at 302 (*Miranda* did not apply to defendant's volunteered statement made in a police car while under arrest); *Cox v. Del Papa*, 542 F.3d 669, 675 (9th Cir. 2008) (*Miranda* did not apply to petitioner's spontaneous statements to police detectives during a ride from Arizona to Nevada; "*Miranda* applies only 'where a suspect in custody *is subjected to interrogation*.'") (emphasis in original) (quoting *Innis*, 446 U.S. at 300).  Petitioner has never alleged that Officer Bracken subjected him either to "express questioning or its functional equivalent."  *Innis*, 446 U.S. at 300-01. Thus, this claim is denied.

## V.    Habeas Relief Is Not Warranted For Petitioner's Due Process And *Brady* Claim (Ground Five).

In Ground Five, Petitioner claims that there were violations of due process and *Brady v. Maryland*, 373 U.S. 83 (1963), because the video evidence was inadequate, inaudible, and cut off.  (Dkt. No. 1 at 6.)

### A.    Legal Standard.

"Under *Brady*, prosecutors are responsible for disclosing 'evidence that is both favorable to the accused and material either to guilt or to punishment.'"  *Browning v. Baker*, 875 F.3d 444, 459 (9th Cir. 2017) (quoting *United States v. Bagley*, 473 U.S. 667, 674 (1985)). "To establish a *Brady* violation, [Petitioner] must show: '(1) the evidence at issue is favorable

27

to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the government, regardless of whether the suppression was willful or inadvertent; and (3) the evidence is material to the guilt or innocence of the defendant.'" *Sanders v. Cullen*, 873 F.3d 778, 802 (9th Cir. 2017) (quoting *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013)).

###    B.    Analysis.

Each of the three officers involved in arresting Petitioner took body camera video of the incident. (1 RT 109, 141, 173.) However, Officer Bracken testified that she "muted the sound on my body-worn camera once we had placed [Petitioner] inside the patrol unit to have a conversation with the other officers that were on the scene." (1 RT 117.) Officer Bracken further testified that the video continued to record while the sound was turned off and that she "turned the sound back on as I entered my patrol vehicle to transport [Petitioner] to County Jail." (*Id.*)

As an initial matter, Petitioner's *Brady* claim is conclusory. Petitioner's claim is "argued in a single page, without reference to the record or any document." *Jones*, 66 F.3d at 204 (internal quotation marks omitted). Because Petitioner's "conclusory allegations did not meet the specificity requirement," his claim may be denied on this ground. *Id.* at 205.

Even if Petitioner's claim could be construed as challenging, under *Brady*, the "inadequate," "inaudible," or "cut off" portions of the video evidence (Dkt. No. 1 at 6), that claim is meritless. Petitioner has failed to allege what was favorable and material from the video evidence. Petitioner's claim is speculative. *See Runningeagle v. Ryan*, 686 F.3d 758, 769-70 (9th Cir. 2012) (petitioner most do more than "merely speculate" that evidence was favorable and material in order to state a *Brady* claim) (collecting cases including *Wood v. Bartholomew*, 516 U.S. 1, 6, 8 (1995) ("[W]here, as in this case, a federal appellate court . . .

28

grants habeas relief on the basis of little more than speculation with slight support, the proper delicate balance between the federal courts and the States is upset to a degree that requires correction.")); *see also Martinez v. Ryan*, 926 F.3d 1215, 1228-29 (9th Cir. 2019) ("wholly speculative" contentions are insufficient to establish a *Brady* violation); *Ayala v. Chappell*, 829 F.3d 1081, 1110 (9th Cir. 2016) ("sparse allegations" are insufficient to establish a *Brady* violation).  Moreover, Petitioner has failed to allege how any evidence was suppressed, in that he has failed to allege how the State impeded him from ascertaining video evidence that was supposedly favorable and material.  *See United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("Where, as here, a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government."); *see also United States v. Bond*, 552 F.3d 1092, 1096 (9th Cir. 2009) (stating that the above passage from *Aichele* is binding precedent "at least in cases like *Aichele* where there was no government action to throw the defendant off the path of the alleged *Brady* information").  Thus, this claim is denied.

## ORDER

For all of the foregoing reasons, **IT IS ORDERED** that the Petition is denied and that Judgment shall be entered dismissing this action with prejudice.

DATED:  July 22, 2022

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE